# UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**SHERRY BUSH, DEBORAH HARVEY,**
**LONA FLEMING, ETHEL TOMLINSON,**

      **Plaintiffs,**

**-vs-**                                    **Case No. 6:07-cv-588-Orl-28DAB**

**ORANGE COUNTY CORRECTIONS**
**DEPARTMENT,**

      **Defendant.**

_____

## ORDER

Plaintiffs Sherry Bush, Lona Fleming, Deborah Harvey, and Ethel Tomlinson bring the instant action against their employer, the Orange County Corrections Department ("OCCD"), alleging discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and the Equal Pay Act of 1963, 29 U.S.C. § 206(d). In the eight-count Complaint (Doc. 1), each of the four Plaintiffs brings a claim under each of these statutes. Plaintiffs claim that they were treated differently regarding promotions and pay based on their race and that they were paid less based on their gender.

This case is now before the Court on the Motion for Summary Judgment (Doc. 18) filed by OCCD. Plaintiffs have not filed a response to the motion. Having considered the record in this case and pertinent law, the Court concludes that OCCD's motion must be granted as to all of Plaintiffs' claims.

## I. Background[1]

Plaintiffs began their employment with OCCD in 1988 (Bush and Tomlinson), 1989 (Harvey), and 1990 (Fleming), working as nurses. (Compl. ¶¶ 16-19). They currently are employed by OCCD as corrections officers. (Id. ¶¶ 7-10). In 2006, Plaintiffs filed complaints with the EEOC alleging discrimination based on their race; they alleged that they, who identify themselves as "Black," were paid less than similarly situated white workers and that their retirement fund contributions were less than those of similarly situated white workers. (Id. ¶ 12). Plaintiffs filed this lawsuit on April 5, 2007. (Id.).

Plaintiffs aver that in 1990, while they were working as nurses for OCCD, their supervisor told them that they would lose their corrections certification as well as their 3% special-risk retirement status if they remained in their nursing positions. (Id. ¶ 20). Plaintiffs then transferred to corrections officer positions, believing that this was a promotion. (Id.). In February 2006, however, Plaintiffs became aware of payroll deficiencies and that the transfers that they received in 1990 "had been recorded as a voluntary demotion and their pay had been reduced without their knowledge." (Id. ¶ 21). Plaintiffs contend in the Complaint that they are being paid less than similarly situated males and less than similarly situated white employees. (Id. ¶¶ 24-25).

## II. Summary Judgment Standards

Summary judgment "should be rendered if the pleadings, the discovery and disclosure

---

[1]The Background section of this Order is derived largely from the allegations of the Complaint.

materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of establishing that no genuine issues of material fact remain. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). However, summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997). However, a "'district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed but, rather, must consider the merits of the motion.'" Trs. of the Cent. Pension Fund v. Wolf Crane Serv., Inc., 374 F.3d 1035, 1039 (11th Cir. 2004) (quoting United States v. One Piece of Prop., 5800 S.W. 4th Ave., Miami, Fla., 363 F.3d 1099, 1102 (11th Cir. 2004)).

### III. Discussion

As earlier noted, Plaintiffs have not filed a response to the motion for summary judgment. The Court has, however, as required by Eleventh Circuit case law, considered the motion on its merits. See, e.g., Trs. of the Cent. Pension Fund, 374 F.3d at 1039.

### A.  Race Discrimination Claims (Counts I, II, III, and IV)

In Counts I-IV, Plaintiffs bring claims of race discrimination under Title VII.  They assert that they were treated differently with regard to pay and promotions than similarly situated white employees.  OCCD argues that these claims are both untimely and lacking in merit.  These contentions are addressed in turn.

#### 1.  Untimeliness

OCCD asserts that Plaintiffs' Title VII claims are untimely.  Plaintiffs complain about demotions and pay reductions that occurred in 1990—sixteen years before this suit was initiated.  In <u>Ledbetter v. Goodyear Tire & Rubber Co.</u>, 127 S. Ct. 2162 (2007), the Supreme Court held that an EEOC charge alleging disparate pay under Title VII must be filed within 180 or 300 days of the discrete pay decision even if there is alleged to be a continuing resulting pay disparity years later.  Under <u>Ledbetter</u>, Plaintiffs' claims would plainly be barred.

However, the <u>Ledbetter</u> decision prompted a Congressional response, and just last week, on January 29, 2009, President Barack Obama signed into law the "Lilly Ledbetter Fair Pay Act of 2009" ("the Act").  The Act amends Title VII—specifically, 42 U.S.C. § 2000e-5(3)—by adding the following provision:

> [A]n unlawful employment practice occurs, with respect to discrimination in compensation in violation of this title, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, § 3, 123 Stat. 5, 5-6.[2] The Act is retroactive and applies "to all claims of discrimination in compensation under Title VII . . . that are pending on or after" May 28, 2007. Id. § 6. Thus, while OCCD's untimeliness argument was valid prior to last week, with the passage of the Act Plaintiffs' Title VII claims are no longer administratively barred.

2. Merits

Nevertheless, Plaintiffs' Title VII claims fail on their merits. Plaintiffs have not presented any direct evidence of discrimination, and therefore their claims are appropriately analyzed using the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and its progeny in order to assess whether they can establish their Title VII discriminatory compensation claims by circumstantial evidence. See, e.g., EEOC v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1286 (11th Cir. 2000) ("Disparate treatment claims require proof of discriminatory intent either through direct of circumstantial evidence. . . . Absent direct evidence, a plaintiff may prove intentional discrimination through the familiar McDonnell Douglas paradigm for circumstantial evidence claims.") (citations omitted); accord Harris v. Sec'y of the Army, 119 F.3d 1313, 1320 (8th Cir. 1997) ("Because she has no direct evidence of discrimination, Harris' sex discrimination claim is governed by the burden shifting analysis first articulated in McDonnell Douglas v. Green.").

Under this framework, the plaintiff in a disparate treatment case has the initial burden

---

[2]The Act also amends the Age Discrimination in Employment Act, the Americans With Disabilities Act, and the Rehabilitation Act of 1973. See Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, § 3, 123 Stat. 5, 6-7.

to establish a prima facie case of discrimination by a preponderance of the evidence. McDonnell Douglas, 411 U.S. at 802. As the Eleventh Circuit has noted, "[d]emonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). If the plaintiff establishes a prima facie case, a presumption of discrimination arises. See, e.g., Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981).

Once the plaintiff has presented a prima facie case and its attendant presumption, the burden "shift[s] to the employer to articulate some legitimate, nondiscriminatory reason" for its actions. McDonnell Douglas, 411 U.S. at 802. The employer's "burden is one of production, not persuasion; it 'can involve no credibility assessment.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)). If the employer meets its burden of production, "'the McDonnell Douglas framework—with its presumptions and burdens'—disappear[s], and the sole remaining issue [is] 'discrimination vel non.'" Reeves, 530 U.S. at 142-43 (quoting St. Mary's Honor Ctr., 509 U.S. at 510, and U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 714 (1983)). In order to prevail on a claim of disparate treatment, the plaintiff must establish that the employer acted with a discriminatory animus. Edwards v. Wallace Cmty. Coll., 49 F.3d 1517 (11th Cir. 1995) (citing Burdine).

Under the McDonnell Douglas/Burdine framework, a Title VII plaintiff alleging discriminatory pay establishes a prima facie case of race discrimination by showing that she occupies a job similar to that of higher paid employees outside of the protected class. Cf. Meeks v. Computer Assocs., Int'l, 15 F.3d 1013, 1019 (11th Cir. 1994). Plaintiffs have

presented no evidence at all, and thus they have not presented a prima facie case of race-based pay discrimination.

Moreover, even if Plaintiffs had established a prima facie case, OCCD has articulated legitimate nondiscriminatory reasons for the pay levels and pay structures of Plaintiffs. OCCD has exhaustively explained in its papers that at the beginning of their employment, Plaintiffs were classified as Correctional Licensed Practical Nurses, but in 1990 the positions were divided and Plaintiffs were given the option of choosing to be classified as either LPNs or Correctional Officers. Plaintiffs chose to be Correctional Officers, and the pay grade system for the position was slightly different from that of Correctional LPN, with a resulting slight discrepancy in pay; for example, Plaintiff Bush's pay initially decreased by 19 cents per hour at the time of transfer. (See Doc. 18 at 7 and exhibits cited therein). Some inadvertent discrepancies in pay occurred after the initial transfer decisions, but OCCD promptly corrected them. (See id. at 18). OCCD has explained that the change in position title was indicated as "voluntary demotion" in employment records only because of a limitation in the personnel system, and memoranda can be placed in employees' personnel files if needed to explain this terminology. Human Resources Manager William Rivera explains in an affidavit that the County uses a classification plan with pay grades based in part of seniority; thus, "individuals assigned to the same job classification may be paid different wages depending on the steps they have earned." (Rivera Aff., Attach. to Doc. 19, at 1). And, since being reclassified as Correctional Officers, Plaintiffs have been paid pursuant to a classification plan that was negotiated and provided for in a Collective Bargaining Agreement. (See id. ¶ 5).

Having articulated nondiscriminatory reasons for the Plaintiffs' pay levels, OCCD is entitled to summary judgment on the Title VII disparate compensation claims unless Plaintiffs present evidence creating a genuine issue of material fact regarding whether these reasons are a mere pretext for discrimination. See, e.g., Chapman v. AI Transp., 229 F.3d 1012, 1024-25 (11th Cir. 2000) ("If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claims."); accord Evans v. McClain of Ga., Inc., 131 F.3d 957, 964-65 (11th Cir. 1997) ("Under the established rule of law in this Circuit, a plaintiff can survive a motion for summary judgment or for judgment as a matter of law by presenting evidence sufficient to demonstrate a genuine issue of material fact as to the truth or falsity of the employer's legitimate, nondiscriminatory reasons."). Again, Plaintiffs have presented no evidence at all, and thus they have plainly not presented any evidence creating a factual issue as to pretext. Plaintiffs have not made any argument challenging OCCD's explanation in any way. OCCD is entitled to summary judgment on the Title VII claims in Counts I, II, III, and IV.

### B. Equal Pay Act Claims (Counts V, VI, VII, and VIII)

In Counts V-VIII, Plaintiffs bring claims of gender discrimination under the Equal Pay Act.[3] Like the Title VII claims, they fail on the merits because Plaintiffs have not presented any evidence supporting these claims.

---

[3] The Equal Pay Act does not contain the same filing requirements as Title VII. See, e.g., Ledbetter, 127 S. Ct. at 2176 ("[T]he EPA and Title VII are not the same."). Thus, these counts are not affected by the Ledbetter decision or the Act, and OCCD does not argue that these claims are untimely.

The Equal Pay Act provides in pertinent part:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided*, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

29 U.S.C. § 206(d)(1). "To establish a prima facie case under the Equal Pay Act, an employee must show that an employer pays different wages to employees of opposite sexes for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." Arrington v. Cobb County, 139 F.3d 865, 876 (11th Cir. 1998) (internal quotations and citations omitted). "Thus, establishing the *prima facie* case requires comparison of the plaintiff's work and earnings to that of a person of the opposite sex . . . ." Butler v. Albany Int'l, 273 F. Supp. 2d 1278, 1288 (M.D. Ala. 2003).

If a plaintiff presents a prima facie case of discriminatory compensation, the burden shifts to the employer to prove one of the four defenses listed in the statute. Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1526 (11th Cir. 1992); accord Steger v. Gen. Elec. Co., 318 F.3d 1066, 1077 (11th Cir. 2003) ("Once the employee presents a prima facie

case [under the EPA], the employer may avoid liability by proving by a preponderance of the evidence that the pay differences are based on "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) . . . any other factor other than sex." (quoting 29 U.S.C. § 206(d)(1))).

Plaintiffs have presented no evidence of a disparity in their pay as compared to any male Corrections Officer. Even assuming that Plaintiffs satisfied a prima facie case here by identifying male employees who received more pay for equivalent work, OCCD has met its burden of establishing a defense—a gender-neutral pay differential. As noted earlier, OCCD has thoroughly explained the division of the Correctional Officer/LPN position in 1990 and Plaintiffs' election to take the Correctional Officer position. There is no evidence of any gender-based differential in pay. The Equal Pay Act claims fail.

## IV. Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. The Motion for Summary Judgment (Doc. 18) filed by Defendant, Orange County Corrections Department, is **GRANTED** as to all of the Plaintiffs' claims.

2. All other pending motions are **DENIED as moot**.

3. The Clerk is directed to enter a judgment in favor of Defendant Orange County Corrections Department on all claims in accordance with this Order. Thereafter, the Clerk

shall close this file.

**DONE** and **ORDERED** in Orlando, Florida this 2nd day of February, 2009.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party